# JAMES T. HARDS *et ux.*

## *v.*

# JOHN BURTON.

1. FORECLOSURE OF MORTGAGE—*defendant desiring an accounting, must present the matter to the attention of the court.* On a bill to foreclose a mortgage, if the mortgagor desires an account taken of the amount of profits for which the mortgagee should account, to be deducted from the mortgage debt, it is his duty, by his solicitor, to present the matter for the action of the court, and if he fails to do so, it is not the duty of the court to take action in the matter and make the claim for him.

2. SAME—*rents and profits treated as payment, when received by mortgagee.* Rents and profits received by the mortgagee from the mortgaged premises are in the nature of payments on the mortgage debt, and when, on a bill to foreclose, the case is referred to the master to ascertain and report the sum due on the mortgage, he should hear all evidence the parties choose to offer in relation to rents and profits received by the mortgagee, and report his finding to the court; but if the mortgagor does not choose to offer such evidence before the master, he has no right to complain of the decree because no account of rents and profits is taken.

3. PARTITION OF MORTGAGED PREMISES—*effect of, on rights of mortgagee.* An arrangement between two or more mortgagors, by which a partition of the mortgaged premises is made, and one of them assumes to pay off the mortgage, and to indemnify the other against the same so far as it covers the property taken by him in the partition, whilst it would be binding between themselves, could not affect the right of the mortgagee to foreclose the mortgage as to such property, nor would a person purchasing the mortgage debt, after such arrangement was made and with full knowledge of all the facts, be bound by it.

4. MARSHALLING ASSETS—*on foreclosure.* Where joint owners of property, subject to a mortgage executed by themselves, make a partition thereof, and one of them undertakes and assumes to pay off the incumbrances on the whole of the property, a court of equity, in decreeing a foreclosure of the mortgage, will direct the property taken by the one assuming to pay the mortgage to be first sold.

5. MASTER IN CHANCERY—*can not be authorized by a decree of court to sell mortgaged premises in default of payment not yet due.* In foreclosing a mortgage, where a portion of the notes representing the mortgage indebtedness are not yet due, it is error to decree that, if default should be made in the payment of the notes to become due, and the holder thereof should file an affidavit of that fact, the master should sell for the satisfac-

tion of such notes. To render such a decree, would be, in effect, allowing the master to find the amount due, and to decree the sale, and then to proceed to execute his decree.

6. SAME—*acts of, binding only when approved and adopted by the court.* The master in chancery is but the ministerial officer of the court, to perform such duties as may be required of him by the chancellor in the performance of his judicial functions. His powers are delegated to him by the court, and the court can confer on him no judicial powers. His acts become binding only by being approved and adopted by the court.

7. MORTGAGE—*foreclosure of, as to a portion of the indebtedness, the remainder not being due.* Where a portion only of a mortgage debt is due, and the mortgage is foreclosed as to such portion, it is not proper to decree that the sale to be made under the decree of foreclosure shall be subject to that portion of the mortgage debt still to become due.

8. The court should always, where all the parties holding liens or having rights are before it, and the prior liens are due, decree the sale neither subject to prior nor subsequent incumbrances, but make it absolute and unincumbered, so that the property may sell for all it is worth, and when the money is received, the chancellor can distribute it according to the equities of the parties.

WRIT OF ERROR to the Circuit Court of Kane county; the Hon. SILVANUS WILCOX, Judge, presiding.

Messrs. WHEATON, SMITH & McDOLE, for the plaintiffs in error.

Mr. J. H. MAYBORNE, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

On the 14th day of February, 1868, Myers, Walker and Heaney executed a mortgage, on a portion of the property described in the bill, to Tuthill and Wells. On the 1st of April, 1868, Smith, Hards and Wright executed a mortgage to Myers, Walker and Heaney, on a portion of the same property embraced in the first, and on other property. On the 14th day of May following, Smith, Hards and Wright executed a mortgage to Myers, Walker and Heaney, on land not included in their previous mortgage to them, and only a part of the property embraced in Myers, Walker and Heaney's

506 HARDS *et ux. v.* BURTON. [Sept. T.

Opinion of the Court.

mortgage to Tuthill and Wells, with other lands. On the 1st of May, 1869, Smith, Hards and Wright executed a trust deed to J. H. Mayborne, embracing the property described in the three previous incumbrances, to secure the payment of $5568 to one Wm. West. These mortgages and deed of trust were given to secure various sums of money, in the aggregate amounting to over $20,000, falling due at divers times.

Defendant in error became, by assignment, the owner of the larger portion of the indebtedness and securities, and the remainder belonged to Heaney. Burton filed a bill to foreclose the mortgages and deed of trust on the property, for the amount due under these securities; and Hards, after answering, filed a cross-bill, by which he claimed that he, Smith and Wright had come to an agreement by which they had divided the mortgaged property, and that he had received his share, and they had assumed to pay the incumbrances on the property, and indemnify him against their payment; that they, on the division, conveyed to him the custom mill, and retained the merchant mill and other property; and prayed that defendant in error be restrained from selling the custom mill in satisfaction of his debt.

On a hearing in the court below, the court granted the relief sought, and ordered the sale of the property, on default in payment, in 20 days, and that certificates of purchase be given, and, on failure to redeem, that deeds be made and possession delivered to the purchasers, and that, on failure to pay the notes yet to fall due, on the holder filing an affidavit of that fact, the master proceed to sell for the satisfaction of the same. The decree provided that the sale to satisfy the portion of the mortgage debts then due, should be subject to the portion still to fall due. Defendant Hards and wife prosecute this writ of error, and urge a reversal, on several grounds.

It is first insisted that the court should have ordered an account to be taken, to ascertain the amount of profits defendant in error should account for, to be deducted from his

claim, before rendering the decree. We nowhere find that plaintiffs in error ever asked for or claimed that such an account should be taken. They surely have no right to find fault with the court for not giving them more than they asked. It was no part of the duty of the court to make claims for them, but if they had any, it was their duty, by their solicitor, to present them for the action of the court. That duty devolved on the attorney, and not upon the court.

As rents and profits received by the mortgagee from the mortgaged premises are in the nature of payment on the mortgage debt, no reason is perceived why plaintiffs in error might not have gone before the master, to whom the reference was made to ascertain and report the sum due on the mortgages, who would, after notifying defendant in error, have heard all of the evidence the parties might have chosen to introduce on the question, and reported his finding to the court; but no such steps were taken, and plaintiffs in error have no right to complain.

We presume that but few persons of intelligence, to say nothing of the members of the profession, could believe that two or more mortgagors could, by arrangement amongst themselves, without the direct concurrence of the mortgagee, settle their affairs so that he could only subject a portion of the mortgaged premises to the payment of his debt. If they could so release a part, they could thus discharge the whole property. Such an arrangement would, of course, be binding on themselves, but all know that, unless the mortgagee was a party to the agreement, he could not be bound by it; and it is equally plain that, even if a person knowing the facts of such an arrangement were to purchase the securities, he would not be bound by it. The proposition is so radically opposed to every rule of law, and so repugnant to justice, that it is only necessary to be stated, that all may see its falsity.

It is, however, urged that, as Hards, on the dissolution of the partnership and division of the property of the firm,

received the custom mill, and Smith and Wright retained the balance of the property, and agreed to pay all the incumbrances against the custom mill as well as the remainder of the property, the court should have at least required the sale of all the other mortgaged property, before the custom mill should be sold. This would have been equitable. Where a person has a security on two funds, and another has a security only on one of the funds, the former, in equity, is always required to exhaust the fund upon which the latter has no security, before resorting to the latter. This is a principle so familiar as to require the citation of no authority or reasoning to demonstrate its justness. So, where a person mortgages property, and afterwards mortgages a portion of the same property to another, the first mortgagee is required to exhaust the portion not covered by the latter mortgage, before he can subject the portion embraced in the second incumbrance. So, where a person mortgages property, and sells a portion of it, the mortgagee must first subject the unsold portion, before he can resort to the portion that was sold. Other illustrations of the rule might be given, and numerous decisions in this court might be referred to as illustrating the rule, but they should be familiar to counsel, and we deem it unnecessary to refer to them.

It appears to us that the same principle applies, with its full force, to this case. Plaintiffs in error became the purchasers from their co-mortgagors of a part of the mortgaged premises, and they agreed to pay off the incumbrances and protect them against the debt. As between the parties themselves, the arrangment was binding, and equity would not permit Smith and Wright to escape their obligation.

Again, it could in nowise prejudice the right of the mortgagee to be required to sell the property in which plaintiffs in error had no interest, before resorting to the sale of theirs. If the remainder of the property should satisfy the incumbrance, then plaintiffs' would escape, and they would hold it according to the agreement with the partners. If not suffi-

cient, then plaintiffs' would have to be sold, and they would be compelled to look to Smith and Wright for indemnity. The court, having all of the parties before it, was bound to do complete justice between all of them, and protect all of their rights. Justice required that the custom mill should have been last sold, and failing to so decree, the court erred.

It is next urged that the court erred in decreeing that, if default should be made in the payment of the notes still to fall due, upon the holder thereof filing an affidavit of that fact, the master should proceed to sell property for their satisfaction. This was manifest error. It was, in effect, allowing the master in chancery to find the amount due, and to, in effect, decree its sale, and then proceed to execute his decree. The master has no such power. He is but the ministerial officer of the court, to perform such duties as may be required of him by the chancellor in the performance of his judicial functions. His powers are delegated to him by the court, and the court can confer on him no judicial powers. Those powers are vested in the judiciary, and can not be delegated to any but persons belonging to that department of government. All the acts of the master become binding only by being approved and adopted by the court. Hence the court alone can find, adjudge and decree so as to bind the parties and the subject matter.

The notes still to fall due were not foreclosed, nor could they be until their maturity. Until that time, the court was wholly unauthorized to make any decree with reference to them. This being the case, any order or decree in reference to them was wholly unauthorized and erroneous. Suppose the mortgagee had filed a bill before any one of the notes fell due, and the court had heard evidence and found the notes had been given, and were still subsisting, and decreed that, in default of their payment, and by the holder filing an affidavit of the fact, the master sell to satisfy the same, could any person be found to maintain the correctness of such a decree? And, in principle, what would constitute the differ-

510 HARDS *et ux.* *v.* BURTON. [Sept. T.

Opinion of the Court.

ence in such a case and the one at bar? We are unable to perceive any, even the slightest. Suppose, before such an affidavit should be filed, the makers were to pay all or a portion of the note, or that some other good and sufficient equitable defense were to arise that should forbid the sale of the property, and which was contested by the holder of the note, who, in such a case, would determine the controversy? Not the master, because he can not be vested with any such power; not the court, because neither the parties nor any case would then be before the court.

The cases of *Aldrich* v. *Sharp*, 3 Scam. 261, *De Wolf* v. *Long*, 2 Gilm. 679, and *Smith* v. *Trimble*, 27 Ill. 152, all hold that it is the duty of the court to find the amount due, and not to leave it to others. The decree, in this respect, is fatally defective.

It is also urged that it was error for the court to decree that the premises be sold subject to the portion of the mortgage debt to fall due. Such a decree is well calculated to operate unjustly and oppressively on the mortgagor, by depreciating the price that would be bid for the property. A purchaser at the master's sale would, of course, deduct the amount of the indebtedness not due when the decree was rendered, from the amount of his bid. If the notes not then due should, by legal proceedings or otherwise, be paid by the makers, then the purchaser would acquire the benefit of such payment, as he bid that amount less at the master's sale. That would be manifestly unjust, if not oppressive, to the mortgagor. The court should always, where all the parties holding liens or having rights are before it, and the prior liens are due, decree the sale neither subject to prior nor subsequent incumbrances, but make it absolute and unincumbered, so that it may sell for all that it is worth. This is but fair and simple justice to the debtor; and when the money is received, the chancellor can distribute it according to the equities of the parties to the case. It can work no injustice to the creditor, and is well calculated to protect the rights of the debtor.

It is said that counsel for plaintiffs in error inspected the decree, and were satisfied with its provisions, before it was signed by the judge. There is nothing in the record showing that fact, and counsel must know that we can only decide a case on the record as it is presented to us for consideration. That not having been embodied in the record, counsel surely do not expect us to act on their mere declaration of what occurred in preparing the decree.

We think that counsel for plaintiffs in error, upon examining their brief, will be satisfied that they have not treated the circuit judge who rendered the decree, with becoming respect, by the manner they have referred to him. Such a course is not to our taste, nor does it, in our estimation, lend force to the argument.

For the errors indicated, the decree of the court below must be reversed and the cause remanded.

*Decree reversed.*