# Illinois Official Reports

## Supreme Court

***Walker v. McGuire*, 2015 IL 117138**

| | |
|---|---|
| Caption in Supreme Court: | REUBEN D. WALKER, Appellee and Cross-Appellant, v. PAMELA J. McGUIRE (The People of the State of Illinois *ex rel.* Lisa Madigan, Attorney General of Illinois, Intervenor-Appellant and Cross-Appellee). |
| Docket No. | 117138 |
| Filed | September 24, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Will County, the Hon. Bobbi N. Petrungaro, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Brett E. Legner, Deputy Solicitor General, of Chicago, of counsel), for appellant. |
| | David A. Novoselsky, of Chicago, and Laird M. Ozmon, of Joliet, for appellee. |
| | Anita Alvarez, State's Attorney, of Chicago (Paul A. Castiglione, Jeffrey S. McCutchan and Margarett S. Zilligen, Assistant State's Attorneys, of counsel), for *amicus curiae* Anita Alvarez. |
| | Paul A. O'Grady and Jennifer L. Turiello, of Peterson, Johnson & Murray, of Chicago, for *amicus curiae* Illinois Housing Development Authority. |

Justices                         JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.


**OPINION**

¶ 1       At issue in this appeal is the constitutionality of section 15-1504.1 of the Code of Civil Procedure (Code), which imposes a $50 filing fee in residential mortgage foreclosure cases, 2% of which is retained by the clerk of the court in which the foreclosure complaint is filed. 735 ILCS 5/15-1504.1 (West 2012). The circuit court of Will County found section 15-1504.1 violates the judicial fee officer prohibition in article VI, section 14, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 14).

¶ 2       For the reasons that follow, we reverse the order of the circuit court and remand for further proceedings.


¶ 3                                    BACKGROUND

¶ 4       In October 2012, plaintiff, Reuben D. Walker, filed a putative class action complaint against defendant, Pamela J. McGuire, clerk of the circuit court of Will County, challenging, *inter alia*, the constitutionality of section 15-1504.1 of the Code. At the time the complaint was filed, section 15-1504.1 provided, in relevant part, as follows:

"Filing fee for Foreclosure Prevention Program Fund.

(a) With respect to residential real estate, at the time of the filing of a foreclosure complaint, the plaintiff shall pay to the clerk of the court in which the foreclosure complaint is filed a fee of $50 for deposit into the Foreclosure Prevention Program Fund, a special fund created in the State treasury. The clerk shall remit the fee to the State Treasurer as provided in this Section to be expended for the purposes set forth in Section 7.30 of the Illinois Housing Development Act. All fees paid by plaintiffs to the clerk of the court as provided in this Section shall be disbursed within 60 days after receipt by the clerk of the court as follows: (i) 98% to the State Treasurer for deposit into the Foreclosure Prevention Program Fund, and (ii) 2% to the clerk of the court for administrative expenses related to implementation of this Section." 735 ILCS 5/15-1504.1 (West 2012).

¶ 5       Plaintiff asserted that the filing fee, which he was required to pay when he filed a mortgage foreclosure action in Will County, was unconstitutional. Plaintiff also asserted that section 7.30 of the Illinois Housing Development Act (Act) (20 ILCS 3805/7.30 (West 2012)), which established the Foreclosure Prevention Program that is funded by the filing fee, is unconstitutional. Plaintiff alleged that the statutes violate separation of powers (Ill. Const. 1970, art. II, § 1); the equal protection, due process, and uniformity clauses (Ill. Const. 1970, art. I, § 2; art. IX, § 2); and the prohibition on fee officers in the judicial system (Ill. Const. 1970, art. VI, § 14). Plaintiff also alleged that the statutes violate the Illinois Constitution, as interpreted in *Crocker v. Finley*, 99 Ill. 2d 444 (1984), by allowing the collection of a filing fee

for noncourt related purposes. Plaintiff sought declaratory and injunctive relief, and a return of all filing fees paid pursuant to section 15-1504.1.

¶ 6    The trial court certified a class of plaintiffs consisting of all individuals and entities who had paid the $50 filing fee at the time plaintiff had filed his mortgage foreclosure action, and a class of defendants consisting of all circuit court clerks in Illinois. The State, through the Attorney General, was allowed to intervene in the matter. See Ill. S. Ct. R. 19 (eff. Sept. 1, 2006); 735 ILCS 5/2-408(c) (West 2012).

¶ 7    Plaintiff filed a motion for partial summary judgment, seeking a declaration that section 15-1504.1 of the Code and section 7.30 of the Act are unconstitutional. The State filed a motion to dismiss, pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2012)), arguing that plaintiff's claims were legally insufficient. The trial court denied the State's motion, and granted plaintiff's motion. The trial court found that circuit court clerks fall within the judicial fee officer prohibition in article VI, section 14, of the Illinois Constitution, and that the provision in section 15-1504.1 authorizing 2% of the filing fee to be retained by the clerk for administrative expenses creates an impermissible fee office. The trial court declared the statute unconstitutional on its face, and found no just reason to delay appeal or enforcement of its order. See Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). The State appealed directly to this court. See Ill. S. Ct. R. 302(a)(1) (eff. Oct. 4, 2011).

¶ 8    Plaintiff filed a notice of cross-appeal challenging the trial court's order to the extent the order was limited to the version of section 15-1504.1 in effect at the time the complaint was filed.

¶ 9    We allowed the Illinois Housing Development Authority and the Cook County State's Attorney to file *amicus curiae* briefs in support of the State and defendant. See Ill. S. Ct. R. 345(a) (eff. Sept. 20, 2010).

¶ 10                                                    ANALYSIS
¶ 11                                    I. Judicial Fee Officer Prohibition
¶ 12    The constitutionality of a statute is a question of law that we review *de novo*. *People v. Melongo*, 2014 IL 114852, ¶ 20. Statutes carry a strong presumption of constitutionality. *People v. Mosley*, 2015 IL 115872, ¶ 22. To overcome this presumption, the party challenging the statute must clearly establish the statute's invalidity. *Id.* This court has a duty to construe a statute in a manner that upholds its constitutionality, if reasonably possible to do so. *Id.*; *Melongo*, 2014 IL 114852, ¶ 20.

¶ 13    The Illinois Constitution contains two distinct provisions relating to fee offices. The provision that appears in the local government article (Ill. Const. 1970, art. VII, § 9(a)), which was the subject of a recent opinion from this court (*Marks v. Vanderventer*, 2015 IL 116226), is not at issue here. Rather, our focus is on the fee officer provision that appears in section 14 of the judicial article:

> "§ 14. Judicial Salaries and Expenses—Fee Officers Eliminated
>
> Judges shall receive salaries provided by law which shall not be diminished to take effect during their terms of office. All salaries and such expenses as may be provided by law shall be paid by the State, except that Appellate, Circuit and Associate Judges shall receive such additional compensation from counties within their district or circuit

as may be provided by law. *There shall be no fee officers in the judicial system.*" (Emphasis added.) Ill. Const. 1970, art. VI, § 14.

¶ 14　　The State argues that, contrary to the trial court's ruling, circuit court clerks do not come within the fee officer prohibition in the judicial article. The State relies on the plain language of article VI, section 14, arguing that this section, as a whole, addresses compensation of "judges," and not compensation of circuit court clerks. The State also relies on the history and purpose of the fee officer prohibition, arguing that it was intended to abolish masters in chancery and other judicial hearing officers who received a fee from the litigants for their services.

¶ 15　　Plaintiff, like the State, relies on the plain language of article VI, section 14. Plaintiff argues, however, that the fee officer prohibition expressly applies to members of the "judicial system," *i.e.*, the judicial branch of government, and that under our case law, circuit court clerks are "nonjudicial officer[s] of the judicial branch of government." *County of Kane v. Carlson*, 116 Ill. 2d 186, 200 (1987).

¶ 16　　The same general principles that govern our construction of statutes also govern our construction of constitutional provisions. *Kanerva v. Weems*, 2014 IL 115811, ¶ 36. Accordingly, our chief purpose, when construing a constitutional provision, is to determine and effectuate the common understanding of the persons who adopted it—the citizens of this state. *Id.* To that end, we will consider the natural and popular meaning of the words used at the time of adoption (*id.*), as well as "the object to be attained or the evil to be remedied" (internal quotation marks omitted) (*People ex rel. Chicago Bar Ass'n v. State Board of Elections*, 136 Ill. 2d 513, 526 (1990)). "Where the language of a constitutional provision is unambiguous, it will be given effect without resort to other aids for construction." *Kanerva*, 2014 IL 115811, ¶ 36. If, however, after consulting the language of the constitutional provision its meaning is in doubt, we will consult the drafting history of the provision, including the debates of the delegates to the constitutional convention. *Glisson v. City of Marion*, 188 Ill. 2d 211, 225 (1999); *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 13 (1996).

¶ 17　　Both parties' plain language arguments have at least some merit. On the one hand, article VI, section 14, as a whole addresses the salaries and expenses of "judges." Considered in this light, the fee officer prohibition simply limits the form judicial compensation may take. This construction is reinforced by the fact that compensation of circuit court clerks is addressed in a different section of the judicial article that expressly addresses "Clerk of Courts." Ill. Const. 1970, art. VI, § 18. Under section 18(c), "[t]he salaries of clerks and other non-judicial officers shall be as provided by law." *Id.* On the other hand, the fee officer prohibition, by its express terms, is applicable to officers in the "judicial system." Circuit court clerks are " 'official[s] of the court system.' " *Drury v. County of McLean*, 89 Ill. 2d 417, 422 (1982) (quoting 4 Record of Proceedings, Sixth Illinois Constitutional Convention 2633 (statements of Delegate Parkhurst) (Proceedings)). Because the language of article VI, section 14 leaves some doubt as to the meaning of the fee officer prohibition, we consider the history of this constitutional provision.

¶ 18　　The judicial fee officer prohibition first appeared as part of the new judicial article to the 1870 Illinois Constitution adopted in 1962, effective January 1, 1964. At that time, the provision stated: "There shall be no masters in chancery or other fee officers in the judicial system." Ill. Const. 1870, art. VI (amended 1964), § 8. The 1970 constitution repeats this

prohibition, but without the reference to masters in chancery. Ill. Const. 1970, art. VI, § 14. The Judiciary Committee to the Sixth Illinois Constitutional Convention considered the reference to masters in chancery a redundancy because masters were included in the more generic term "fee officers." 6 Proceedings 996 (Judiciary Committee Proposal No. 3). The change in the judicial fee officer prohibition in the 1970 constitution was thus viewed as a stylistic change, rather than a substantive one. *Id.*; 3 Proceedings 2277 (statements of Delegate Fay).

¶ 19    Because no change in meaning was intended with the change in language, the 1964 fee officer provision informs our interpretation of the 1970 provision. Accordingly, to determine whether the clerks of the circuit courts are subject to the judicial fee officer prohibition, we take a closer look at the fee officer expressly identified in the 1964 judicial article—the master in chancery.

¶ 20    Simply stated, a master in chancery is "[a]n officer appointed by a court of equity to assist the court." Black's Law Dictionary 1065 (9th ed. 2009). The use of masters as an aid to chancery courts, *i.e.*, courts of equity, can be traced back to sixteenth century England. Irving R. Kaufman, *Masters in the Federal Courts: Rule 53*, 58 Colum. L. Rev. 452, 452 n.1 (1958). In Illinois, their use dates back to at least 1835, when the first act relating to masters in chancery was enacted. James R. Bryant, *The Office of Master in Chancery—Development and Use in Illinois*, 49 Nw. U.L. Rev. 458, 465 (1954) (citing 1835 Ill. Laws 32).

¶ 21    The principal statute governing masters in chancery that was in effect immediately prior to the adoption of the new judicial article provided for the appointment in each county of one or more masters who served two-year terms. Ill. Rev. Stat. 1961, ch. 90, ¶¶ 1-2. The statute outlined the powers and duties of masters:

> "Masters in Chancery, in their respective counties, shall have authority to take depositions, both in law and equity, to administer oaths, to compel the attendance of witnesses, take acknowledgment of deeds and other instruments in writing, and perform all other duties which, according to the laws of this State and the practice of courts of chancery, appertain to the office." Ill. Rev. Stat. 1961, ch. 90, ¶ 6.

¶ 22    Although described by this court as "ministerial" officers (*Bottom v. City of Edwardsville*, 308 Ill. 68, 73 (1923); *Hards v. Burton*, 79 Ill. 504, 509 (1875)), masters in chancery frequently functioned as hearing officers, taking testimony, considering the evidence, and reporting back their findings of fact and conclusions of law to the chancery court. See *e.g.*, *Schuringa v. City of Chicago*, 30 Ill. 2d 504, 507 (1964) (where the trial court referred a taxpayers' action to enjoin the city from fluoridating the city's water supply to a master who heard the evidence, made findings of fact and conclusions of law, and recommended the complaint be dismissed); *Dineff v. Wernecke*, 27 Ill. 2d 476, 477-78 (1963) (where the trial court referred a complaint for specific performance to a master who heard the evidence and returned a report recommending dismissal); *Maley v. Burns*, 6 Ill. 2d 11, 12-13 (1955) (where the trial court referred a complaint by certain beneficiaries under a will to set aside two deeds to a master to take the proof and report his recommendations to the court); see also James R. Bryant, *The Office of Master in Chancery—Development and Use in Illinois*, 49 Nw. U.L. Rev. 458, 466-67 (1954) (discussing "The Nature of the Office of Master in Chancery"). The master's findings and recommendations were advisory only, and were not binding upon the parties unless approved by the court. See *Montgomery v. Downey*, 17 Ill. 2d 451, 459 (1959); *Hards*, 79 Ill. at 509.

¶ 23    Of grave concern to litigants, who were required to accept the master's services (*Fitchburg Steam Engine Co. v. Potter*, 211 Ill. 138, 153-54 (1904)), were the master's fees. James R. Bryant, *The Office of Master in Chancery—Development and Use in Illinois*, 49 Nw. U.L. Rev. 458, 470 (1954). The masters in chancery were not salaried officers. Their compensation was in the form of fees charged as costs to the litigants (*id.*; Ill. Rev. Stat. 1961, ch. 53, ¶ 38), and apportioned among the parties as the trial court saw fit (*McFail v. Braden*, 19 Ill. 2d 108, 121 (1960)). Simply because a defendant prevailed did not mean the defendant was immune from paying a portion of the master's fees. See *Schuringa*, 30 Ill. 2d at 518-19 (affirming trial court's order apportioning half of the master's fees to the prevailing defendant).

¶ 24    The master's fees added substantially to the cost of litigation. For example, in a chancery case that came before this court in 1960, we reduced the master's fees from $5,404 to $3,904. *Eberle v. Greene*, 18 Ill. 2d 322, 329 (1960). Adjusted for inflation, $3,904 would amount to over $31,000 today, not an insubstantial sum. See http://www.bls.gov/ data/inflation _calculator.htm. As one legal writer noted, the attorney was often compelled to advise the settlement of litigation merely because the client did not have the funds available to pay the master's fees. James R. Bryant, *The Office of Master in Chancery—Development and Use in Illinois*, 49 Nw. U.L. Rev. 458, 470-71 (1954). Accordingly, the elimination of masters in chancery was considered "a major achievement in minimizing costs of litigation." George D. Braden & Rubin G. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 352 (1969).

¶ 25    Closely related to masters in chancery were "referees." Pursuant to statute, when an action at law was pending, the court could, by agreement of the parties, "appoint a referee to hear the parties, examine their vouchers and evidence, state accounts and report upon such matters therein as may be ordered by the court." Ill. Rev. Stat. 1961, ch. 90, ¶ 51. Thus, like masters, referees functioned as hearing officers, and were compensated by fees taxed to the litigants as costs. Ill. Rev. Stat. 1961, ch. 90, ¶ 54.

¶ 26    No question exists that referees also came within the scope of the fee officer prohibition in the new judicial article. See Ill. Const. 1870, art. VI (amended 1964), sched. ¶ 8 (treating referees the same as masters during the transition period following the adoption of the new judicial article). Indeed, in 1965, the legislature repealed the statutes governing both masters in chancery and referees to bring the law in conformity with the new judicial article. See 1965 Ill. Laws 3532 (repealing legislation addressing fees payable to masters); 1965 Ill. Laws 3594-95 (repealing legislation governing the appointment and powers of masters and referees).

¶ 27    We think it evident that the 1964 fee officer prohibition and, by extension, the 1970 fee officer prohibition, were aimed at officers who (1) had a direct role in the adjudicative process of the court system, and (2) were compensated for their services through the payment of fees taxed to the litigants. Case law from this court is consonant with this view of the judicial fee officer prohibition.

¶ 28    In *Grace v. Howlett*, 51 Ill. 2d 478, 481 (1972), this court held that a compulsory arbitration provision in the Illinois Insurance Code violated the judicial fee officer prohibition where the arbitrator's fees were taxed to the losing party as costs, and the arbitrator's decision was entered by the court in its record of judgments, which was binding unless reversed on appeal. Conversely, in *Reed v. Farmers Insurance Group*, 188 Ill. 2d 168, 181 (1999), this court held that a different compulsory arbitration provision in the Illinois Insurance Code did

not violate the judicial fee officer prohibition where the statute was silent as to the parties' responsibility for the arbitrator's fees, that subject being covered by the insurance policy itself, and where the arbitrator's judgment was subject only to limited judicial review.

¶ 29    Although neither *Grace* nor *Reed* contain an in-depth analysis, our decisions were apparently influenced by the degree to which the arbitrator's decision was intertwined with the adjudicatory process of the courts, and whether the parties before the arbitrator were required by statute to pay his or her fees. As summed up by one legal scholar, "the key to the ban on 'fee officers' seems to be the definition of a 'fee officer.' Does the person have a financial stake in the parties' claims, and are his duties really part of the adjudicatory system? If so, he is apparently a 'fee officer' " for purposes of article VI, section 14. Ann M. Lousin, The Illinois State Constitution, A Reference Guide 155 (2010); see also *Anderson v. Anderson*, 42 Ill. App. 3d 781, 786-87 (1976) (observing that the fee officer prohibition in article VI, section 14, applies to judicial officers, or to quasi-judicial officers such as masters in chancery, and not to lesser administrative assistants who perform ministerial, nonjudicial functions).

¶ 30    With this understanding of the judicial fee officer prohibition, we return to the question of whether the clerks of the circuit courts fall within the ambit of this constitutional provision. We hold that they do not. Although clerks of the circuit courts are officers of the judicial branch of government, they are, as plaintiff necessarily concedes, *nonjudicial* officers. *Drury*, 89 Ill. 2d at 423. Clerks of the circuit courts perform no adjudicative or quasi-judicial function like the masters in chancery, the referees in actions at law, or the arbitrators in *Grace*. 705 ILCS 105/13 (West 2012) (outlining duties of circuit court clerks); see also *People ex rel. Vanderburg v. Brady*, 275 Ill. 261, 262 (1916) ("A clerk of a court is an officer of the court who has charge of the clerical part of its business ***."). Accordingly, the trial court erred when it applied the judicial fee officer prohibition to the clerks of the circuit courts, and when it struck section 15-1504.1 of the Code as creating an impermissible fee office.

¶ 31                                     II. Cross-Appeal

¶ 32    While this case was pending in the trial court, the legislature twice amended section 15-1504.1 of the Code and section 7.30 of the Act. See Pub. Act 97-1164, §§ 5, 15 (eff. June 1, 2013); Pub. Act 98-20, §§ 5, 15 (eff. June 1, 2013). The trial court's order, finding section 15-1504.1 unconstitutional, expressly stated that it applied only to the preamended statute. In his notice of cross-appeal, plaintiff challenged the trial court's order "to the extent said order limits its holding to the version of 735 ILCS 5/15-1504.1 *** in effect at the time the instant case was filed."

¶ 33    In his opening brief as appellee/cross-appellant, however, plaintiff did not address this issue. Instead, plaintiff argued, as and for his cross-appeal, that the statute violates other constitutional provisions. The State argues that plaintiff's alternative grounds for sustaining the trial court's judgment are not the proper subject of a cross-appeal. We agree with the State, and decline to address plaintiff's alternative constitutional arguments.

¶ 34    Plaintiff clearly stated in his opening brief that he filed his cross-appeal "to address the fact that this statute [section 15-1504.1 of the Code] is in violation of several other provisions of the Illinois Constitution in addition to the finding made by the trial court that the statute created an impermissible Fee Office." Thus, plaintiff urged this court to affirm the judgment of the trial court. It is textbook, however, that a cross-appeal may not be prosecuted "solely to sustain the

- 7 -

judgment of the trial court; rather, the necessity of filing a cross appeal arises only in situations where the appellee requests reversal or modification of the judgment below." 2 Ill. L. and Prac. *Appeal and Error* § 10, at 208-09 (2002).

¶ 35 Additionally, we note that the State brought this appeal pursuant to Rule 302(a). Ill. S. Ct. R. 302(a) (eff. Oct. 4, 2011). This rule provides for direct appeals to this court where a statute of this state has been held invalid. *Id.* The primary purpose of this provision is to " 'preserve stability in our legal system; when legislation has been held unconstitutional, the rule provides for immediate review by the ultimate authority in this state on the law.' " *Hearne v. Illinois State Board of Education*, 185 Ill. 2d 443, 454 (1999) (quoting *Trent v. Winningham*, 172 Ill. 2d 420, 425 (1996)). This purpose has been fulfilled in this case by our consideration, and rejection, of the sole basis on which the trial court found section 15-1504.1 of the Code unconstitutional.

¶ 36 As to the issue identified in plaintiff's notice of cross-appeal—that the trial court erred by limiting its ruling to the preamended statute—plaintiff first addressed this issue in his reply brief. Under our rules governing appellate practice, "[p]oints not argued are waived and shall not be raised in the reply brief." Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). We note, however, that plaintiff's discussion of this issue was apparently made in reply to the State's argument challenging the cross-appeal. For this reason, we will overlook any waiver that would otherwise operate and consider plaintiff's argument on the merits. See Ill. S. Ct. R. 343(b)(1) (eff. July 1, 2008) ("the cross-appellant may file a reply brief confined strictly to replying to those arguments raised on the cross-appeal").

¶ 37 The record discloses that the trial court ordered additional briefing on the effect, if any, of the statutory amendments on the issues before the court. In its written ruling, the court made plain that it was reviewing the constitutionality of the statutes as they existed at the time the complaint was filed. The trial court stated:

> "[T]he Court specifically asked the parties whether the amended statutes in any way impacted the pending case. The Court was not asked to consider the amended statutes and this ruling is limited solely to the statutes pending in their form at the time of filing." (Emphasis added.)

After setting forth, in its order, the relevant statutory provisions, the trial court stated, "Again, this Court has not been charged with reviewing the versions of the statutes effective in June 2013." And when the trial court then found section 15-1504.1 facially unconstitutional, the court reiterated that "this holding is limited to the version of 735 ILCS 5/15-1504.1 in effect at the time the case was filed."

¶ 38 Plaintiff argues, in his reply brief, that the trial court was mistaken in its belief that it was not asked to consider the amended statutes. Plaintiff asserts that when the parties briefed the effect of the statutory amendments on the litigation, his complaint was thereby "amended," bringing the amended statutes before the trial court. We disagree.

¶ 39 The complaint frames the issues before the trial court. *Petraski v. Thedos*, 2011 IL App (1st) 103218, ¶ 140. Plaintiff's complaint, filed in October 2012, challenged the constitutionality of section 15-1504.1 of the Code and section 7.30 of the Act that were then in effect. Merely briefing an additional issue did not result in amendment of the complaint. A plaintiff must take affirmative steps to amend his complaint, which may only be accomplished with leave of court. See 735 ILCS 5/2-616 (West 2012) (governing amendment of pleadings);

*Kerbes v. Raceway Associates, LLC*, 2011 IL App (1st) 110318, ¶ 14 (plaintiff must seek and obtain the court's permission in order to file an amended complaint). Here, the record is devoid of any request by plaintiff to amend his complaint to include a challenge to the amended statutes, or to add additional named plaintiffs who paid the filing fee under the amended statutes.

¶ 40    Plaintiff further argues that no amendment of his complaint was necessary because the trial court ruled on the basis of a class of plaintiffs that included all "who pay" foreclosure fees in Illinois, whether under the original or amended version of section 15-1504.1. Plaintiff's argument is belied by the record.

¶ 41    The order granting plaintiff's motion for class certification stated simply that the court grants certification of a class of all plaintiffs "who paid the 735 ILCS 15-1504.1 fee." In a subsequent order, however, the class was expressly defined as "all individuals or entities that paid the $50.00 fee *at the time that Plaintiff filed an action seeking to foreclose on property located in Illinois*." (Emphasis added.) Plaintiff's foreclosure action and his payment of the $50 filing fee that spawned the present litigation occurred well before the statutes were amended. Thus, contrary to plaintiff's argument, the class certification order did not somehow bring the amended statute before the trial court.

¶ 42    In sum, we find no basis in the record or the law to conclude that the trial court erred in limiting its ruling to the preamended version of section 15-1504.1 of the Code.

¶ 43                                                    CONCLUSION

¶ 44    For the reasons stated, we reverse the order of the trial court which found section 15-1504.1 of the Code facially unconstitutional under article VI, section 14 of the Illinois Constitution, and remand this matter to the trial court for further proceedings.

¶ 45    Reversed and remanded.