# Illinois Official Reports

## Supreme Court

---

### *Blanchard v. Berrios*, 2016 IL 120315

---

| | |
|---|---|
| Caption in Supreme Court: | PATRICK M. BLANCHARD, Independent Inspector General of Cook County, Appellee, v. JOSEPH BERRIOS, Assessor of Cook County, Appellant. |
| Docket No. | 120315 |
| Filed | December 1, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Franklin U. Valderrama, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. |
| Counsel on Appeal | Anita Alvarez, State's Attorney, of Chicago (Donald J. Pechous, Paul A. Castiglione, Kent S. Ray, and Marie D. Spicuzza, Assistant State's Attorneys, of counsel), for appellant. |
| | Alexander Polikoff, Special State's Attorney, of Chicago, for appellee. |
| Justices | JUSTICE FREEMAN delivered the judgment of the court, with opinion. |
| | Chief Justice Karmeier and Justices Thomas, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion. |

¶ 1    A Cook County ordinance obligates county officers to cooperate with investigations conducted by the Office of the Independent Inspector General (Inspector General) and to comply with subpoenas issued by the Inspector General. At issue in this appeal is whether that ordinance is constitutional as applied to Joseph Berrios, in his official capacity as the assessor of Cook County (the Assessor). The circuit court of Cook County determined that the ordinance is constitutional as applied to the Assessor and entered summary judgment granting declaratory and other relief in favor of the Inspector General. The appellate court affirmed. 2015 IL App (1st) 142857. For the reasons that follow, we affirm the judgment of the appellate court.

¶ 2                                        BACKGROUND

¶ 3    In 2007, the Cook County Board of Commissioners (Board) created the Inspector General's office and invested it with certain duties. Cook County Code of Ordinances § 2-281 *et seq.* (approved July 31, 2007) (hereinafter the IG Ordinance). The stated purpose of the Inspector General's office is to "detect, deter and prevent corruption, fraud, waste, mismanagement, unlawful political discrimination or misconduct in the operation of County government." *Id.* § 2-283. To accomplish this stated purpose, the Inspector General's office is charged with investigating such wrongdoing in the operations of county government, including those of "separately elected County officials." *Id.* § 2-284(2). In the course of its investigations, the Inspector General's office may request information from and conduct interviews under oath with county officials and may issue subpoenas requesting documents or testimony that are enforceable in the circuit court of Cook County. *Id.* §§ 2-284(4), 2-286.

¶ 4    All county departments, employees, and elected officials have a duty to cooperate with investigations initiated by the Inspector General's office pursuant to the IG Ordinance. *Id.* § 2-285(d). It is a violation of the IG Ordinance to interfere with, obstruct, or attempt to interfere with or obstruct an investigation conducted by the Inspector General. *Id.* § 2-291(a)(2).

¶ 5    If an investigation by the Inspector General's office results in information indicating wrongful conduct, the Inspector General is obligated to "prepare confidential reports and make recommendations for corrective action." *Id.* § 2-284(5). Yet the ordinance does not authorize the Inspector General to implement any such recommendations or otherwise interfere with the operations of county departments, including those of separately elected officials, nor does it confer prosecutorial power on the Inspector General. In the event the Inspector General determines or suspects that possible criminal conduct has occurred, he or she is authorized "[t]o notify the State's Attorney or other appropriate law enforcement authority *** and to promptly tender to such authorities any evidence or information which has been obtained." *Id.* § 2-284(6).

¶ 6    In 2012, the Inspector General initiated an investigation into the circumstances surrounding the grant of two homeowner's exemptions to an employee of the Assessor's office. See 35 ILCS 200/15-175 (West 2014). As part of the investigation, the Inspector General sent a written request to the Assessor's office seeking information and documents relating to the homeowner's exemptions granted by the Assessor's office. The Assessor

refused to provide the requested information and advised the Inspector General that the documents could be obtained by submission of a request under Illinois's Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2014)).

¶ 7        Thereafter, the Inspector General served a subpoena on the Assessor's office, seeking the documents that were the subject of the written request as well as the personnel file of the employee who received the exemptions. The Assessor objected to the subpoena based on the assertion that the Inspector General lacked authority to issue subpoenas to elected county officers such as the Assessor. In addition, the Assessor stated that the information and documents sought by the subpoena could be provided only in response to a FOIA request. The Inspector General subsequently served a second subpoena upon the Assessor's office, which was identical to the first in all respects except for the date. The Assessor again objected on the ground that the Inspector General lacked authority to subpoena information from elected county officers.

¶ 8        The Inspector General then brought an action against the Assessor seeking a declaratory judgment that the Assessor is obligated to cooperate with the Inspector General's investigation and to comply with the subpoena issued during the course of that investigation. The Inspector General also sought an order directing the Assessor to comply with the previously issued subpoena.

¶ 9        The Assessor did not dispute the factual allegations set forth in the Inspector General's amended complaint, and both parties moved for summary judgment on the legal question of whether the IG Ordinance's imposition of the duty to cooperate with the Inspector General's investigation and comply with subpoenas issued as part of an investigation is constitutional as applied to the Assessor. Upon consideration of the parties' cross-motions for summary judgment, the circuit court determined that the ordinance is constitutional as applied to the Assessor. Accordingly, the court entered summary judgment in favor of the Inspector General and ordered the Assessor to produce the materials subpoenaed by the Inspector General.

¶ 10       The appellate court affirmed the judgment of the circuit court, holding that the Board validly exercised its home rule authority when it enacted the IG Ordinance and granted the Inspector General the power to investigate suspected misconduct by elected county officers and to issue subpoenas to aid in such investigations. 2015 IL App (1st) 142857, ¶¶ 11-13, 15, 18. The appellate court also rejected the Assessor's arguments that the provisions of the IG Ordinance infringed on the authority of the State's Attorney to convene grand juries and prosecute crimes. *Id.* ¶ 16. The Assessor filed a petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Jan. 1, 2015)), which we granted.

¶ 11                                    ANALYSIS

¶ 12       As noted above, the circuit court entered summary judgment in favor of the Inspector General. Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). The circuit court's ruling was based on the conclusion that the IG Ordinance does not violate the bounds of the county's authority under the 1970 Constitution. Our review of this legal determination is *de novo. Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 410 (2005).

¶ 13    On appeal, the Assessor asserts that the Board exceeded its constitutional authority by enacting the IG Ordinance, which imposed a duty on elected county officials to cooperate with an investigation by the Inspector General and to comply with subpoenas issued as part of such an investigation. The Inspector General argues that the circuit and appellate courts correctly held that enactment of the IG Ordinance was a proper exercise of the Board's constitutional authority.

¶ 14    In assessing the validity of a local ordinance, courts apply the same standards that govern the construction of statutes. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008). Like statutes, local ordinances are presumed constitutional, and the burden of rebutting that presumption is on the party challenging the ordinance's validity to clearly demonstrate a constitutional violation. *Id.* A reviewing court will uphold the constitutionality of an ordinance when reasonably possible. *Id.* at 306-07.

¶ 15    In this case, the Assessor's challenge of the validity of the IG Ordinance implicates sections 4(c), 4(d), and 6(a) of article VII of the Illinois Constitution and requires us to determine the scope and interrelationship of those sections as they relate to the ordinance. Ill. Const. 1970, art. VII, §§ 4(c), (d), 6. These determinations present questions of constitutional interpretation.

¶ 16    The interpretation of constitutional provisions is governed by the same general principles that apply to statutes. *Walker v. McGuire*, 2015 IL 117138, ¶ 16. In construing a constitutional provision, our primary goal is to ascertain and give effect to the common understanding of the citizens who adopted it, and courts look first to the plain and generally understood meaning of the words used. *Id.* " 'Where the language of a constitutional provision is unambiguous, it will be given effect without resort to other aids for construction.' " *Id.* (quoting *Kanerva v. Weems*, 2014 IL 115811, ¶ 36). If doubt as to the meaning of a provision exists after the language has been considered, it is appropriate to consult the drafting history of the provision, including the debates of the delegates to the constitutional convention. *Id.* It is also "proper to consider constitutional language 'in light of the history and condition of the times, and the particular problem which the convention sought to address.' " *Kanerva*, 2014 IL 115811, ¶ 36 (quoting *Client Follow-Up Co. v. Hynes*, 75 Ill. 2d 208, 216 (1979)).

¶ 17    Article VII of the 1970 Constitution governs local governmental units, and section 4 of that article addresses county officers. Ill. Const. 1970, art. VII, § 4. Section 4(c) provides, in relevant part, as follows:

"Each county shall elect a sheriff, county clerk and treasurer and may elect or appoint a coroner, recorder, assessor, auditor and such other officers as provided by law or by county ordinance. *** Any office may be created or eliminated and the terms of office and manner of selection changed by county-wide referendum. Offices other than sheriff, county clerk and treasurer may be eliminated and the terms of office and manner of selection changed by law. Offices other than sheriff, county clerk, treasurer, coroner, recorder, assessor and auditor may be eliminated and the terms of office and manner of selection changed by county ordinance." Ill. Const. 1970, art. VII, § 4(c).

Section 4(d) of the local government article states as follows:

"County officers shall have those duties, powers and functions provided by law and those provided by county ordinance. County officers shall have the duties, powers or

- 4 -

functions derived from common law or historical precedent unless altered by law or county ordinance." Ill. Const. 1970, art. VII, § 4(d).

Pursuant to this section, the sources of the duties, powers, and functions of county officers are statutes and county ordinances, as well as common-law and historical precedent, unless altered by statute or county ordinance. See ILCS Ann., Ill. Const. 1970, art. VII, § 4(d), Constitutional Commentary, at 254 (Smith-Hurd 2006).

¶ 18    Further, the Counties Code provides that "[n]o county board may alter the duties, powers and functions of county officers that are specifically imposed by law," but the county board "may alter any other duties, powers or functions or impose additional duties, powers and functions upon county officers." 55 ILCS 5/5-1087 (West 2014).

¶ 19    These constitutional and statutory provisions explicitly permit the imposition of new, additional duties on elected county officers by enactment of a county ordinance. The Assessor does not dispute this point. He contends, however, that the IG Ordinance did not simply impose new duties. Rather, he asserts, the ordinance improperly stripped him of the ability to supervise the operation of his office and its employees without interference from or regulation by the Inspector General. According to the Assessor, the IG Ordinance is unconstitutional because the Board cannot eliminate that power or transfer any of his supervisory authority to another county officer. This contention is without merit.

¶ 20    First, it must be noted that the Assessor has not cited any constitutional or statutory provision specifically granting him the power to operate and supervise his office free from any oversight or investigation by another county officer. Therefore, if such a power exists, it derives from common-law or historical precedent. In support of his claim, the Assessor cites to *People ex rel. Walsh v. Board of Commissioners*, 397 Ill. 293, 301-02 (1947), for the proposition that a legislative body cannot strip an elected county officer of his "time honored and common law functions."[1] Relying on *Walsh*, the Assessor argues that a county ordinance cannot modify the duties of an elected county officer in a manner that alters or eliminates the historical powers of supervision over the operation and employees of his office.

¶ 21    Yet the Assessor's argument fails to recognize that the language of section 4(d) expressly allows for the alteration of a common-law or historical power by enactment of a county ordinance. Ill. Const. 1970, art. VII, § 4(d). Indeed, this provision was adopted to modify the ruling in *Walsh*. See 4 Record of Proceedings, Sixth Illinois Constitutional Convention 3290-92; see also ILCS Ann., Ill. Const. 1970, art. VII, § 4(d), Constitutional Commentary, at 254 (Smith-Hurd 2006) (stating that "[s]ubsection 4(d) is intended to modify the ruling in People ex rel. Walsh v. Board of Comm'rs of Cook County [citation] that [c]onstitutional county officers have the common law powers historically attributed to their offices, and that such powers may not be limited by statute").

¶ 22    Therefore, even assuming that under common law an elected county officer is vested with the power to perform his duties without any oversight by another county officer, the terms of

---

[1]The Assessor also relies on *Fairbank v. Stratton*, 14 Ill. 2d 307, 311-12 (1958), for the same general proposition. However, *Fairbank* involved the powers and duties of the State Treasurer, which are not addressed in article VII, the local government article of the 1970 Constitution, or section 5-1087 of the Counties Code. Therefore, *Fairbank* has no particular application here and does not bolster the Assessor's argument.

section 4(d) specifically authorize modification of that power by county ordinance. Accordingly, nothing in section 4 of article VII poses an obstacle to the enactment of the IG Ordinance or its requirements that elected county officers, including the Assessor, cooperate with investigations initiated by the Inspector General and comply with subpoenas issued as part of such investigations.

¶ 23　However, the fact that section 4(d) expressly permits the imposition of additional duties on county officers does not end our inquiry because the authority granted under section 4(d) cannot be enforced in a manner that would violate another provision of our constitution. In construing constitutional provisions, "it is incumbent upon the court to give meaning to every section and clause of the instrument." *Oak Park Federal Savings & Loan Ass'n v. Village of Oak Park*, 54 Ill. 2d 200, 203 (1973). When different parts of the constitution appear to conflict, it is our duty to harmonize them, if practicable. *Id.* One provision will not be allowed to defeat another if a reasonable construction will permit them to stand together. *Id.*

¶ 24　The Assessor contends that enforcement of the terms of section 4(d) in this case would conflict with the home rule article of the constitution. Therefore, we consider the scope of the county's home rule authority granted under section 6 of article VII of the 1970 Constitution, as it applies to the IG Ordinance.

¶ 25　In recent years, this court has repeatedly recognized that the adoption of the home rule article as part of the 1970 Constitution "drastically altered" the balance of power between our state and local governments, giving local governments greater autonomy. *City of Chicago v. StubHub, Inc.*, 2011 IL 111127, ¶ 18; see also *Schillerstrom Homes, Inc. v. City of Naperville*, 198 Ill. 2d 281, 286-87 (2001); *City of Evanston v. Create, Inc.*, 85 Ill. 2d 101, 107 (1981) (citing 4 Record of Proceedings, Sixth Illinois Constitutional Convention 3024). The shift in the balance of power away from State dominance and in favor of home rule is premised on the understanding that problems affecting units of local government and their residents should be addressed with solutions tailored to meet those local needs. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 29; *Schillerstrom Homes, Inc.*, 198 Ill. 2d at 286; *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 502 (1984).

¶ 26　Section 6(a) of article VII provides as follows:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a).

This provision was drafted with the intent to give home rule units " 'the broadest powers possible' " under the constitution. *StubHub*, 2011 IL 111127, ¶ 18 (quoting *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 174 (1992)). In addition, section 6(m) states that "[p]owers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m).

¶ 27　Although certain areas of local concern are identified, the basic grant of home rule power set forth in section 6(a) is deliberately broad and imprecise as a means of affording great flexibility. *City of Evanston*, 85 Ill. 2d at 107. As recognized by the framers, the task of further interpretation of that intentionally imprecise language has fallen to the judicial branch. *StubHub*, 2011 IL 111127, ¶ 19 (citing 4 Record of Proceedings, Sixth Illinois Constitutional Convention 3052).

¶ 28    The phrase " 'pertaining to' " in section 6(a) created a " 'general and uncertain limitation' " on the power of local governments. *StubHub*, 2011 IL 111127, ¶ 21 (quoting David C. Baum, *A Tentative Survey of Illinois Home Rule (Part I): Powers and Limitations*, 1972 U. Ill. L.F. 137, 152. However, section 6 as a whole was intended to prevent implied preemption, or preemption by judicial interpretation. *Id.* (citing Baum, *supra*, at 154). To further the constitutional design, courts should limit home rule powers through interpretation of the " 'pertaining to' " language " 'only in the clearest cases of oppression, injustice, or interference by local ordinances with vital state policies.' " *Id.* ¶ 22 (quoting Baum, *supra*, at 156-57).

¶ 29    In explaining the appropriate analysis under section 6(a), this court has stated:

> " 'Whether a particular problem is of statewide rather than local dimension must be decided not on the basis of a specific formula or listing set forth in the Constitution but with regard for the nature and extent of the problem, the units of government which have the most vital interest in its solution, and the role traditionally played by local and statewide authorities in dealing with it.' " *Id.* ¶ 24 (quoting *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 501 (1984)).

The mere existence of comprehensive state regulation is insufficient to preclude the exercise of home rule by a local governmental entity. *Id.* ¶ 25; *Kalodimos*, 103 Ill. 2d at 502. Instead, courts will "declare a subject off-limits to local government control only where the state has a vital interest and a traditionally exclusive role." *StubHub*, 2011 IL 111127, ¶ 25.

¶ 30    Therefore, our threshold inquiry requires that we examine the nature and extent of the problem sought to be remedied by the IG Ordinance. The Assessor argues that "the operation of the Assessor's office and allegations of wrongdoing in that office do not pertain to the County's government and affairs." In support, the Assessor relies on *Chicago Bar Ass'n v. County of Cook*, 102 Ill. 2d 438 (1984), which considered the validity of a county ordinance that altered the number of commissioners on the county board of tax appeals and the procedure by which the board made its decisions as to the assessment of property taxes. *Id.* at 439-40. In concluding that the ordinance exceeded the county's home rule authority, this court held that the assessment of property for tax purposes does not pertain to the county's government and affairs under section 6(a). *Id.* at 440-41.

¶ 31    We reject the Assessor's argument as fundamentally flawed because it mischaracterizes the nature of the problem addressed by the IG Ordinance. There is nothing in the language of the ordinance that relates to the assessment of property for tax purposes. None of its provisions attempt to alter or interfere with the performance of the Assessor's duties or the day-to-day functions of the employees of that office. Consequently, the Assessor's reliance on *Chicago Bar Ass'n* is misplaced.

¶ 32    As noted above, the ordinance created the Inspector General's office, the stated purpose of which is to "detect, deter and prevent corruption, fraud, waste, mismanagement, unlawful political discrimination or misconduct in the operation of County government." IG Ordinance § 2-283. The achievement of this goal falls within the police power granted to home rule units "to regulate for the protection of the public health, safety, morals and welfare." Ill. Const. 1970, art. VII, § 6(a); see generally *City of Evanston*, 85 Ill. 2d at 115.

¶ 33    In addition, it is clear that Cook County has an interest in discovering and averting corruption, fraud, waste, mismanagement, unlawful political discrimination, or misconduct in

all county offices. The Assessor's office is funded through an annual budgetary allocation of Cook County funds authorized by a Board resolution. 55 ILCS 5/6-24001 (West 2014). As the manager of county funds and business, the Board is accountable to the public for the overall operation of county government. *Loop Mortgage Corp. v. County of Cook*, 291 Ill. App. 3d 442, 447 (1997) (citing *Heller v. County Board*, 71 Ill. App. 3d 31, 38 (1979)). Preserving the integrity and efficient operation of its offices is a charge that lies with the county and the Board, as manager of all county business. The IG Ordinance provides the county with the means of addressing possible corruption, fraud, and other specified types of malfeasance within its offices. Therefore, the problem sought to be remedied by the IG Ordinance is local in nature.

¶ 34    We next consider whether the county or the State has the most vital interest in solving the problem identified by the IG Ordinance. The Assessor contends that the regulation of applications for a homeowner's exemption is a matter of vital State policy relating to the taxation of real estate throughout the State. Again, we observe that the Assessor's contention is premised on a mischaracterization of the IG Ordinance and the problem it is designed to address—the ordinance does not relate to the taxation of real estate or the regulation of homeowner's exemption applications.

¶ 35    In addition, the mere existence of State interest and activity in a particular subject matter is insufficient to preclude home rule activity. *City of Evanston*, 85 Ill. 2d at 113. Therefore, although the Property Tax Code tasks the Department of Revenue with general supervision over the assessment of real estate in Illinois (35 ILCS 200/8-5 (West 2014)), that fact does not demonstrate a vital interest in maintaining the integrity and efficiency of a county office such as the Assessor's. The Assessor has not pointed to any statutory provisions that reflect a statewide interest in detecting corruption and fraud in county offices. As noted above, Cook County has the most vital interest in preserving the integrity and efficient operation of its offices. The IG Ordinance furthers that interest by allowing the Inspector General to investigate possible corruption, fraud, and other types of malfeasance.

¶ 36    Lastly, we address the role traditionally played by local and statewide authorities in dealing with the problem of possible corruption, fraud, waste, and the other types of malfeasance identified in the ordinance. The Assessor points to certain provisions in the Property Tax Code that relate to the assessment of property for tax purposes and the Department of Revenue's responsibility for general oversight of that governmental function. Based on these provisions, the Assessor contends that the State has had a more traditional role in determining whether a homeowner's exemption was properly awarded. Yet again, we note that the subject matter of the IG Ordinance has nothing to do with the granting of homeowner's exemptions. The ordinance does not speak to the operation of the Assessor's office or the supervision of its employees, nor does it impact the manner in which decisions regarding the granting of homeowner's exemptions are made. The statutory provisions cited by the Assessor do not specifically authorize the Department of Revenue to initiate investigations as to possible corruption, fraud, waste, mismanagement, unlawful political discrimination, or misconduct within a county assessor's office. Consequently, the Department of Revenue's responsibility for general oversight regarding property assessment does not indicate that the State has had a traditional role in detecting and deterring the types of misconduct addressed in the IG Ordinance. Based upon consideration of all of the above factors, we conclude that the subject of the IG Ordinance pertains to the government and affairs of Cook County.

¶ 37    In urging a different result, the Assessor challenges the validity of the IG Ordinance on several other grounds that do not fall directly within our analysis of the "pertaining to" language in section 6(a) of article VII of the constitution. First, the Assessor claims that the ordinance is unconstitutional because the Inspector General is not a law enforcement officer and because the Board lacks authority to grant the Inspector General the power to issue subpoenas. This claim does not defeat the county's exercise of home rule power to enact the ordinance.

¶ 38    It is undisputed that the Inspector General is not a law enforcement officer. Indeed, the IG Ordinance specifically provides that if an investigation results in information indicating wrongful conduct, the Inspector General is to "prepare confidential reports and make recommendations for corrective action." IG Ordinance § 2-284(5). If the Inspector General determines or suspects that possible criminal conduct has occurred, he has authority "[t]o notify the State's Attorney or other appropriate law enforcement authority *** and to promptly tender to such authorities any evidence or information which has been obtained." *Id.* § 2-284(6). The fact that the Inspector General is not a law enforcement officer has no direct bearing on whether the IG ordinance is a valid exercise of home rule power.

¶ 39    Because Cook County is a home rule unit, it is invested with the same sovereign power as the state government, except where explicitly limited by the legislature. *StubHub*, 2011 IL 111127, ¶¶ 21-25. The Assessor acknowledges that the Board could grant subpoena power to a commission or committee, but he offers no constitutionally sound reason why such power cannot be granted to the Inspector General.[2] Consequently, Cook County can exercise its home rule authority by investing subpoena power in the Inspector General, a commission, or a committee in the same way that the legislature can grant such power to a State commission or agency.

¶ 40    Next, we consider the Assessor's claim that, because the office of the assessor of Cook County is elected, that office is "separate" from Cook County for purposes of determining home rule authority under section 6(a) of the constitution. We do not agree because acceptance of the Assessor's argument requires that we reject the clear language and structure of the local government article of the constitution.

¶ 41    As set forth in section 1 of article VII, the constitution recognizes several different types of units of local government: counties, municipalities, townships, special districts, and units designated by law as having limited governmental powers. Ill. Const. 1970, art. VII, § 1. Nothing in that section indicates that the assessor of Cook County is on equal footing with the county or the other units of local government specified therein. Also, by its terms, the 1970 Constitution recognizes three categories of State and local government in Illinois: the State and its agencies, units of local government, and school districts. See ILCS Ann., Ill. Const. 1970,

---

[2]We note that the Assessor cites *Appeal Board of the Department of Environmental Control v. United States Steel Corp.*, 48 Ill. 2d 575, 577-79 (1971), for the proposition that, absent a grant of authority from the legislature or the constitution, a unit of local government does not have the authority to issue subpoenas. However, as the Assessor acknowledges, this case applied "Dillon's rule," which embodied the principle that a municipality has only those powers that the legislature has expressly granted to it. This principle was abandoned when the 1970 Constitution went into effect. Indeed, the abrogation of "Dillon's rule" was the whole point of the new home rule provision. See 4 Record of Proceedings, Sixth Illinois Constitutional Convention 3038-39.

art. VII, § 1, Constitutional Commentary, at 241 (Smith-Hurd 2006). The Assessor's office must be a part of some category of government. The Assessor does not argue that his office is part of the State or any of its agencies, such as the Department of Revenue, and it is obvious that his office is not part of a school district. Thus, the Assessor's office is a part of Cook County, the unit of local government from which he is elected and for which he and the employees of that office perform their functions and duties.

¶ 42 The Assessor also cites the decisions in *County of Cook v. Village of Bridgeview*, 2014 IL App (1st) 122164, *County of Cook v. Village of Rosemont*, 303 Ill. App. 3d 403 (1999), and *City of Highland Park v. County of Cook*, 37 Ill. App. 3d 15 (1975), for the proposition that a home rule unit cannot enact legislation that pertains to the government and affairs of "another *public body*." (Emphasis in original.) In each of these cases, our appellate court invalidated local ordinances that had an extraterritorial impact on other units of local government. *Village of Bridgeview*, 2014 IL App (1st) 122164, ¶¶ 16-18, 21; *Village of Rosemont*, 303 Ill. App. 3d at 408-10; *City of Highland Park*, 37 Ill. App. 3d at 25-26. In the Assessor's view, the holdings of these cases apply to the circumstances presented here and are not limited to cases involving an ordinance that impacts another unit of local government. We do not agree. Although their holdings do not expressly limit their applicability, the decisions in these cases were premised on the fact that the local ordinances affected another unit of local government and resulted in an extraterritorial impact. The factual and legal circumstances underlying the analysis in these cases cannot be divorced from their judgments.

¶ 43 The Assessor further claims that this court's decisions in *Carver v. Sheriff of La Salle County*, 203 Ill. 2d 497 (2003), and *Moy v. County of Cook*, 159 Ill. 2d 519 (1994), demonstrate that the IG Ordinance cannot be applied to his office because it is not a part of county government. The Assessor's reliance on *Carver* and *Moy* is misplaced. The analysis and judgments in *Carver* and *Moy* focused on the questions of indemnification of a "local public entity" under the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2000)) and the determination of whether a person is an "employee" for purposes of imposing vicarious tort liability under the doctrine of *respondeat superior*. See *Carver*, 203 Ill. 2d at 506-07, 515-16; *Moy*, 159 Ill. 2d at 523-25, 527-30. In those contexts, the question of employment status is critical in determining liability. Although the Assessor cannot be considered an "employee" of the county because he is an elected officer, that fact is not relevant for purposes of determining whether an ordinance falls within the grant of home rule power under section 6(a) of the constitution. Accordingly, *Carver* and *Moy* do not govern here.

¶ 44 In sum, the IG Ordinance adopted by the Cook County Board of Commissioners, which imposed a duty on all county officials including elected officers to cooperate with investigations conducted by the Inspector General and to comply with subpoenas issued by the Inspector General as part of such investigations, is constitutional as applied to the Assessor. Accordingly, the circuit and appellate courts correctly held that the Assessor is bound by those duties and must comply with the subpoena issued by the Inspector General.

¶ 45                                    CONCLUSION

¶ 46            For the foregoing reasons, the judgment of the appellate court is affirmed.

¶ 47            Appellate court judgment affirmed.