# Illinois Official Reports

## Supreme Court

---

### *Iwan Ries & Co. v. City of Chicago*, 2019 IL 124469

---

| | |
|---|---|
| Caption in Supreme Court: | IWAN RIES & CO. *et al.*, Appellants, v. THE CITY OF CHICAGO *et al.*, Appellees. |
| Docket No. | 124469 |
| Filed | December 19, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Ann Collins-Dole, Judge, presiding. |
| Judgment | Appellate court judgment reversed. <br> Circuit court judgment affirmed. |
| Counsel on Appeal | Stanley R. Kaminski and Amy E. McCracken, of Duane Morris LLP, of Chicago, for appellants. <br><br> Mark A. Flessner, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Ellen W. McLaughlin, Assistant Corporation Counsel, of counsel), for appellees. |

Justices      JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Justices Thomas, Garman, Karmeier, and Neville concurred in the judgment and opinion.

Justice Theis dissented, with opinion.

Chief Justice Burke took no part in the decision.

## OPINION

¶ 1  In 2016, defendant the City of Chicago enacted an ordinance that imposed a municipal tax on units of noncigarette "other tobacco products" (OTP) purchased in the City. See Chicago Municipal Code § 3-49 *et seq.* (added Mar. 16, 2016). Thereafter, plaintiffs, various entities with interests in the tobacco-products industry, filed a complaint seeking declaratory and injunctive relief. Plaintiffs argued that the City's ordinance was preempted by section 8-11-6a of the Illinois Municipal Code (65 ILCS 5/8-11-6a (West 2016)), addressing the authority of home rule units to impose certain taxes, including cigarette and other tobacco product taxes.

¶ 2  After considering the parties' cross-motions for summary judgment, the Cook County circuit court agreed with the plaintiffs on the preemption issue and granted their motion. The appellate court reversed. 2018 IL App (1st) 170875, ¶ 32.

¶ 3  For the following reasons, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 4           I. BACKGROUND

¶ 5  Since 1971, defendant the City of Chicago has imposed a municipal tax on the purchase of cigarettes in the city. See, *e.g.*, Chicago Municipal Code § 3-42-20 (amended Dec. 14, 2016). More recently, on March 16, 2016, the City enacted an ordinance that imposed a municipal tax on purchases of noncigarette "other tobacco products" for the first time. See Chicago Municipal Code § 3-49 *et seq.* (added Mar. 16, 2016). The new ordinance imposes a $1.80 per ounce tax on smoking and smokeless tobacco, a $0.60 per ounce tax on pipe tobacco, and a $0.20 tax per cigar. Chicago Municipal Code, § 3-49-30 (added Mar. 16, 2016). This new "other tobacco products" tax is the subject of the instant appeal and referred to by the parties as "the OTP tax."[1]

¶ 6  On May 26, 2016, several plaintiffs with interests or involvement in the tobacco-products industry filed a verified complaint for declaratory judgment and injunctive relief. Plaintiffs asked the circuit court to invalidate the OTP tax and enjoin its enforcement.

¶ 7  On June 17, 2016, plaintiffs filed an amended complaint. In that complaint, plaintiffs sought declaratory and injunctive relief in three counts: (1) count I sought a declaratory judgment that the OTP tax violated the applicable home rule provisions of the Illinois

---

[1]According to the City, although the OTP tax was scheduled to become effective July 1, 2016, the City deferred its implementation pending the circuit court's ruling and has continued to defer implementation while this litigation is pending.

Constitution (Ill. Const. 1970, art. VII, § 6(g)) and section 8-11-6a of the Illinois Municipal Code (65 ILCS 5/8-11-6a (West 2016)), (2) count II sought preliminary and permanent injunctive relief, and (3) count III sought relief from an alleged "improper litigation penalty" in the ordinance.

¶ 8 After the City answered plaintiffs' complaint, plaintiffs filed a motion for partial summary judgment. Plaintiffs argued they were entitled to partial summary judgment in their favor on counts I and II of their amended complaint, seeking declaratory and injunctive relief, respectively. Plaintiffs contended there were no genuine issues of material fact and they were entitled to judgment as a matter of law.

¶ 9 In relevant part, plaintiffs asserted that the City's OTP tax was preempted by the plain language of section 8-11-6a of the Illinois Municipal Code (65 ILCS 5/8-11-6a (West 2016)). Plaintiffs maintained that the legislature enacted that statute to enable home rule municipalities to impose taxes on cigarettes or other tobacco products in only limited circumstances. Specifically, plaintiffs argued that under the statute the City was not permitted to impose a municipal tax on other tobacco products unless "such a tax" existed prior to July 1, 1993. Because the City did not tax other tobacco products prior to July 1, 1993, and instead only taxed cigarettes prior to July 1, 1993, the OTP tax the City enacted in 2016 was invalid.

¶ 10 Plaintiffs further asserted that, even if the statutory language was ambiguous, the City's OTP tax was preempted by the legislative intent underlying section 8-11-6a. Specifically, the legislative debates on the provision demonstrated that the legislature intended to prohibit new local taxes on cigarette or tobacco products to protect state tax revenues on tobacco products and limit local taxes on those same products. The legislature sought to ameliorate the effects of state tax increases on cigarettes and noncigarette tobacco products that occurred in 1993 and preserve jobs in the Illinois tobacco industry by restricting taxes on tobacco products at the state and local level.

¶ 11 The City also filed a motion for summary judgment, arguing that "the sole issue" was whether section 8-11-6a preempted the City's home rule authority to impose the OTP tax. According to the City, the key language of that provision was that "a home rule municipality that has not imposed a tax based on the number of units of cigarettes or tobacco products before July 1, 1993, shall not impose such a tax after that date." 65 ILCS 5/8-11-6a (West 2016). The City contended that the plain statutory language "grandfathers" the City's OTP tax because the City imposed a tax based on the number of units of cigarettes before July 1, 1993. Therefore, the City was not a municipality that failed to impose a tax on cigarettes or other tobacco products before July 1, 1993.

¶ 12 Contrary to the plaintiffs' position, the City asserted that "the distinction drawn by [the statute] was between *municipalities* that were grandfathered and those that were not—not between *tobacco taxes* that were grandfathered and those that were not." (Emphases in original.) The City alleged that both the plain language of the provision and its legislative history authorized the City to impose a home rule tax on any and all tobacco products.

¶ 13 On January 20, 2017, after considering full briefing and arguments on the parties' cross-motions for summary judgment, the circuit court entered a nine-page opinion and order. Ultimately, the court found that, as a matter of law, the plain language of section 8-11-6a of the Illinois Municipal Code preempted the City's authority to enact the OTP tax. Accordingly, the court granted plaintiffs' motion for partial summary judgment and denied the City's motion

for summary judgment. The court later amended its order to include language pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) to allow an appeal.

¶ 14 On appeal, the appellate court reversed the judgment of the circuit court. After construing the plain language and legislative history of the statute, the court concluded that, when "[r]eading section 8-11-6a in its entirety, it follows that the legislature intended for a home rule municipality to be able to tax cigarettes *or* tobacco products so long as the home rule municipality had '*a tax*' in place on either 'cigarettes or tobacco products' prior to July 1, 1993. (Emphasis added.) 65 ILCS 5/8-11-6a (West 2016)." (Emphases in original.) 2018 IL App (1st) 170875, ¶ 31. Thus, the court concluded that "because the City had enacted a tax on cigarettes prior to July 1, 1993, it fulfilled the condition of the statute that 'a tax' exist on *either* the number of units of cigarettes *or* tobacco products" and its OTP tax was not preempted. (Emphases in original.) 2018 IL App (1st) 170875, ¶ 32.

¶ 15 Plaintiffs filed a petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2018). We allowed that petition.

¶ 16 II. ANALYSIS

¶ 17 This case requires us to consider whether section 8-11-6a of the Illinois Municipal Code (65 ILCS 5/8-11-6a (West 2016)) preempts the City's home rule authority to enact a municipal ordinance imposing the OTP tax (Chicago Municipal Code § 3-49 *et seq.* (added Mar. 16, 2016)). Specifically, we must construe section 8-11-6a of the Illinois Municipal Code to determine whether it precludes the City from exercising its home rule power to enact the OTP tax for the first time in 2016.

¶ 18 This question originates in the circuit court's ruling on cross-motions for summary judgment. Summary judgment may be granted when the pleadings, depositions, admissions, and affidavits, viewed in the light most favorable to the nonmovant, fail to establish that a genuine issue of fact exists, thereby entitling the moving party to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 34. When, as here, parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and that the case may be resolved as a matter of law. *Jones v. Municipal Employees' Annuity & Benefit Fund*, 2016 IL 119618, ¶ 26. Because this case involves the circuit court's ruling on cross-motions for summary judgment and requires statutory construction, our review is *de novo*. *Oswald v. Hamer*, 2018 IL 122203, ¶ 9.

¶ 19 When construing a statute, the goal of this court is to ascertain and give effect to the intent of the legislature. The most reliable indicator of the legislature's intent is the plain and ordinary meaning of the statutory language. *Cassidy v. China Vitamins, LLC*, 2018 IL 122873, ¶ 17. This court reviews the statute as a whole, construing words and phrases in the context of the entire statute and not in isolation. *Oswald*, 2018 IL 122203, ¶ 10. We also remain mindful of the subject it addresses and the legislature's apparent purpose in enacting the statute. *Monson v. City of Danville*, 2018 IL 122486, ¶ 14.

¶ 20 Fundamentally, the dispute in this appeal involves the Illinois Constitution's grant of power to home rule units. Under article VII, section 6(a), of the Illinois Constitution, "[e]xcept as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur

debt." Ill. Const. 1970, art. VII, § 6(a). In addition, the Illinois Constitution requires that the "[p]owers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m).

As we have explained, "[s]ection 6(a) was written with the intention to give home rule units the broadest powers possible." *Palm v. Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 30 (citing *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 174 (1992)). In fact, "this court has repeatedly recognized that the adoption of the home rule article as part of the 1970 Constitution 'drastically altered' the balance of power between our state and the local governments, giving local governments greater autonomy." *Blanchard v. Berrios*, 2016 IL 120315, ¶ 25 (quoting *City of Chicago v. StubHub, Inc.*, 2011 IL 111127, ¶ 18). This transfer of power to units of local government is predicated on the assumption that municipalities should be allowed to address their problems by tailoring solutions to local needs. *Blanchard*, 2016 IL 120315, ¶ 25; *Palm*, 2013 IL 110505, ¶ 29.

Although the constitutional grant of power to home rule units is deliberately broad (*Blanchard*, 2016 IL 120315, ¶ 27), the General Assembly nonetheless retains the constitutional authority to "preempt the exercise of a municipality's home rule powers by expressly limiting that authority." *Palm*, 2013 IL 110505, ¶ 31; see also Ill. Const. 1970, art. VII, § 6(i) (home rule units "may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive"). With respect to a home rule unit's power to tax, "[t]he General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or function of a home rule unit not exercised or performed by the State." Ill. Const. 1970, art. VII, § 6(g).

We now consider the language of section 8-11-6a of the Illinois Municipal Code, the statutory provision central to the parties' arguments in this case. Titled "Home rule municipalities; preemption of certain taxes," the statute provides, in relevant part, as follows:

> "Except as provided in Sections 8-11-1, 8-11-5, 8-11-6, 8-11-6b, 8-11-6c, and 11-74.3-6 on and after September 1, 1990, no home rule municipality has the authority to impose, pursuant to its home rule authority, a retailer's occupation tax, service occupation tax, use tax, sales tax or other tax on the use, sale or purchase of tangible personal property based on the gross receipts from such sales or the selling or purchase price of said tangible personal property. Notwithstanding the foregoing, this Section does not preempt any home rule imposed tax such as the following: (1) a tax on alcoholic beverages, whether based on gross receipts, volume sold or any other measurement; (2) a tax based on the number of units of cigarettes or tobacco products (provided, however, that a home rule municipality that has not imposed a tax based on the number of units of cigarettes or tobacco products before July 1, 1993, shall not impose such a tax after that date); (3) a tax, however measured, based on the use of a hotel or motel room or similar facility; (4) a tax, however measured, on the sale or transfer of real property; (5) a tax, however measured, on lease receipts; (6) a tax on food prepared for immediate consumption and on alcoholic beverages sold by a business which provides for on premise consumption of said food or alcoholic beverages; (7) other taxes not based on the selling or purchase price or gross receipts

from the use, sale or purchase of tangible personal property. *** This Section is a limitation, pursuant to subsection (g) of Section 6 of Article VII of the Illinois Constitution, on the power of home rule units to tax." 65 ILCS 5/8-11-6a (West 2016).

Assigning the plain meaning to that language, it is readily apparent from the first sentence that the legislature intended to exercise its constitutional authority to preempt a home rule unit from imposing a broad range of taxes. Eliminating all ambiguity, the legislature stated in the last sentence that "[t]his Section is a limitation, pursuant to subsection (g) of section 6 of Article VII of the Illinois Constitution, on the power of home rule units to tax." 65 ILCS 5/8-11-6a (West 2016).

¶ 24    In other words, section 8-11-6a begins and ends with clear legislative intent to limit a home rule unit's authority to impose certain taxes. That unambiguous statutory language demonstrates legislative intent to preempt the home rule unit's power on those taxing issues. See *Palm*, 2013 IL 110505, ¶ 43 (explaining that, to limit home rule authority, the General Assembly "must do so specifically"); see also *Schillerstrom Homes, Inc. v. City of Naperville*, 198 Ill. 2d 281, 287 (2001) ("a state statute cannot preempt home rule power unless it contains 'specific language' setting forth that legislative intent" (quoting 5 ILCS 70/7 (West 2000))).

¶ 25    Section 8-11-6a also contains seven specific exemptions to its otherwise broad restrictions on a home rule unit's power to tax. Generally, these seven legislative exemptions allow home rule units to impose certain taxes on alcoholic beverages, cigarettes, or other tobacco products; motel or hotel rooms; sale or transfer of real property; lease receipts; food prepared for immediate consumption and alcohol sold by businesses that make food for immediate consumption on site; and other taxes not based on the selling or purchase price or gross receipts from the use, sale, or purchase of tangible personal property. See 65 ILCS 5/8-11-6a (West 2016).

¶ 26    Here, the parties' core dispute is on the proper interpretation of section 8-11-6a's exemption permitting home rule taxes on sales of cigarettes and other tobacco products. That subsection allows a home rule municipality to impose "a tax based on the number of units of cigarettes or tobacco products (provided, however, that a home rule municipality that has not imposed a tax based on the number of units of cigarettes or tobacco products before July 1, 1993, shall not impose such a tax after that date)." 65 ILCS 5/8-11-6a (West 2016).

¶ 27    Plaintiffs argue that the limiting clause in the parentheses demonstrates that "the General Assembly purposefully utilized the conjunction 'or' and the term 'such a tax' to make it clear that it was prohibiting a municipal cigarette tax *or* a municipal tobacco products tax unless *such a tax* was imposed before July 1, 1993." (Emphases in original.) Plaintiffs contend that the statutory phrase "such a tax" must be read to modify each of the individual taxes listed in the preceding clause: a tax based on the number of units of cigarettes or a tax based on the number of units of tobacco products.

¶ 28    Citing legislative history, plaintiffs further argue that the General Assembly intended for the July 1, 1993, cutoff date in section 8-11-6a to limit municipal power to impose new taxes on cigarettes or other tobacco products in the future and to protect state tax revenue and jobs. Plaintiffs observe that the City has previously tried on multiple occasions, albeit unsuccessfully, to convince the General Assembly to amend section 8-11-6a to expressly allow a home rule unit to impose a new tax on other tobacco products.

¶ 29     The City disagrees and responds that the phrase "a tax based on the number of units of cigarettes or tobacco products" in the first clause of section 8-11-6a should be interpreted to refer to a "broad category" of taxes on any product containing tobacco. For support, the City relies on the legislative history and notes that the legislature consistently used the word "or" when describing the other categories of products that home rule units are allowed to tax in section 8-11-6a, such as taxes on "a hotel or motel room or similar facility" and "food or alcoholic beverages." In grammatical terms, the City argues that the legislature employed "or" as an "inclusive disjunction," allowing home rule units the choice, when taxing within the category, to tax one thing or another or both.

¶ 30     According to the City, "[i]n carving out these exceptions from preemption of home rule taxing power, the General Assembly used 'or' to group similar types of taxes; it allowed a home rule unit to continue to tax one or multiple items within these categories." The City argues that the phrase "such a tax" in the limiting clause in parentheses should be construed expansively to refer to a general category of taxes on tobacco-containing products and to exempt from preemption any and all future taxes imposed by the City within that category. Because the City imposed a tax on a product within that general category, namely, cigarettes, prior to July 1, 1993, the City asserts that the plain language of section 8-11-6a allows it to impose future taxes on other tobacco products, including the OTP tax enacted in 2016 and challenged here.

¶ 31     The City asserts that the language of section 8-11-6a "grandfathers certain municipalities— those that previously imposed taxes based on the number of units of cigarettes or tobacco products sold—and not certain taxes." The City contends that the General Assembly did not distinguish between municipal taxes imposed before and after July 1, 1993, but, instead, distinguished between home rule municipalities that imposed "such a tax" and those that did not. The City maintains that section 8-11-6a "struck a balance between boosting state tax revenue and preserving the power of some home rule units to continue taxing cigarettes and tobacco products." The City acknowledges its prior failed attempts to persuade the General Assembly to amend section 8-11-6a to "make [home rule] units' power to tax non-cigarette tobacco products more explicit" but asserts that those unsuccessful attempts are immaterial here and were intended only to "clarify" the statute and avoid future litigation on the issue.

¶ 32     In our view, plaintiffs' interpretation best comports with the legislative intent underlying the exemption in section 8-11-6a as demonstrated by the plain meaning of its language. The first clause of section 8-11-6a exempts municipal taxes on cigarettes or other tobacco products from the otherwise expansive preemption of such taxes in the remainder of section 8-11-6a. Thus, standing alone, the first clause permits a home rule unit to impose a municipal tax on cigarettes or other tobacco products, or both.

¶ 33     Critically, though, the legislature chose to sharply limit that authority in the next clause contained in the parentheses of section 8-11-6a. Specifically, the legislature limited a home rule unit's taxing authority as follows: "provided, however, that a home rule municipality that has not imposed a tax based on the number of units of cigarettes or tobacco products before July 1, 1993, shall not impose such a tax after that date." 65 ILCS 5/8-11-6a (West 2016). This limitation must be construed together with the first clause of section 8-11-6a. See *Oswald*, 2018 IL 122203, ¶ 10 (a reviewing court must consider the statute as a whole and does not consider language in isolation).

¶ 34    Assigning the ordinary meaning to the language in both clauses of section 8-11-6a, we agree with plaintiffs that the statute allows only those municipal taxes on cigarettes or other tobacco products enacted prior to July 1, 1993. As the legislature provided, a home rule unit "shall not impose such a tax after that date." 65 ILCS 5/8-11-6a (West 2016).

¶ 35    In fact, there can be no question that the legislature intended for July 1, 1993, to be the applicable focus on whether a home rule unit had authority to impose future municipal taxes on cigarettes or other tobacco products. As the parties agree, the original version of the provision did not contain any restricting date for home rule taxation on cigarettes or other tobacco products. Thus, the original version of the statute allowed home rule taxes on cigarettes or other tobacco products or both, with no temporal limit whatsoever. See Ill. Rev. Stat. 1989, ch. 24, ¶ 8-11-6a (permitting a home rule municipality to impose "a tax based on the number of units of cigarettes or tobacco products"). In 1993, however, the legislature amended the statute to provide, in relevant part, that "a home rule municipality that has not imposed a tax based on the number of units of cigarettes or tobacco products before July 1, 1993, shall not impose such a tax after that date." Pub. Act 88-527 (eff. Dec. 23, 1993) (amending 65 ILCS 5/8-11-6a).

¶ 36    As plaintiffs assert, the express statutory cutoff date for permissible municipal taxes on cigarettes or other tobacco products is most reasonably construed as a legislative decision to exempt only *existing* taxes on cigarettes or other tobacco products. Contrary to the City's position, the plain language of section 8-11-6a does not support a conclusion that it was intended to allow new municipal taxes on cigarettes or other tobacco products in the future. Rather, the plain statutory language demonstrates legislative intent to prohibit future municipal taxes on cigarettes or other tobacco products unless the tax was enacted before July 1, 1993. Undoubtedly, this decision was within the constitutional discretion afforded the legislature. See Ill. Const. 1970, art. VII, § 6(g) (granting constitutional authority to General Assembly to limit a home rule unit's power to tax); see also 65 ILCS 5/8-11-6a (West 2016) (explicitly invoking subsection (g) of article VII of the Illinois Constitution to limit the power of home rule units to tax, in relevant part, cigarettes and other tobacco products).

¶ 37    The City attempts to avoid the clear legislative restriction on a home rule unit's power to tax cigarettes and other tobacco products by advocating an expansive interpretation of section 8-11-6a. According to the City, the 2016 OTP tax was a permissible exercise of its broad home rule authority despite the undisputed fact that "such a tax" had not been enacted prior to July 1, 1993. Essentially, the City contends that a tax on cigarettes is synonymous with a tax on other tobacco products and that, because it imposed a tax on cigarettes prior to July 1, 1993, it can impose a tax on other tobacco products in 2016. The City cites no authority that would support equating a tax on cigarettes with a tax on other tobacco products. While cigarettes and other tobacco products may be related, the legislature treats them distinctly for tax purposes. Compare 35 ILCS 130/1 *et seq.* (West 2016) (Cigarette Tax Act), with 35 ILCS 143/10-1 *et seq.* (West 2016) (Tobacco Products Tax Act of 1995). Consistent with the legislature's approach, we reject the City's invitation to treat taxes on cigarettes as interchangeable with taxes on other tobacco products for purposes of section 8-11-6a.

¶ 38    The City's position suffers from an additional flaw. As we have already explained, the overarching legislative purpose of section 8-11-6a was to restrict a home rule unit's power to tax. Allowing unlimited future taxes on all tobacco-based products for those municipalities

that merely imposed a single tax on one tobacco product prior to July 1, 1993, as the City argues, undermines this legislative purpose. See *Sperl v. Henry*, 2018 IL 123132, ¶ 23 (explaining that a reviewing "court may also consider the reason for the statute, the problems it seeks to remedy, the purposes to be achieved, and the consequences of interpreting the statute one way or another"). Necessarily, then, we reject the City's position. See *People v. Latona*, 184 Ill. 2d 260, 269 (1998) (reviewing court has a duty to avoid a construction of a statute that would defeat the statute's purpose).

¶ 39    In closing, we acknowledge the public policy arguments the City cites to support the validity of the OTP tax. The City claims that it enacted the OTP tax in response to a market shift from cigarettes to noncigarette tobacco products and growing concerns about the public health consequences of such products, particularly among young adults. Demonstrating the growing use of other tobacco products, the City notes that in 1995 the State received $5.1 million in revenues from the state tax on other tobacco products. More recently, the state tax on other tobacco products generated almost $43 million, representing a 700% increase in state tax revenue. To reduce consumption of these products and the associated health risks, the City adopted various regulatory measures and enacted its OTP tax.

¶ 40    In our opinion, the City's public policy arguments related to the use and taxation of other tobacco products are better directed to the General Assembly. This is especially true when, as here, the legislature has acted to preempt and restrict home rule taxes on cigarettes and other tobacco products in section 8-11-6a of the Illinois Municipal Code. Although the General Assembly has rejected the City's prior requests to amend that statute to allow explicitly the City to tax other tobacco products, the City's arguments on the evolving nature of OTP use and its impact on taxation may warrant reconsideration of the statutory scheme. But that is a decision for the General Assembly, not this court. See *Manago v. County of Cook*, 2017 IL 121078, ¶ 13 (explaining that this court is neither responsible nor best equipped to evaluate and set public policy).

¶ 41                              III. CONCLUSION

¶ 42    For the reasons stated, we conclude that the City's ordinance imposing the OTP tax is preempted by section 8-11-6a of the Illinois Municipal Code (65 ILCS 5/8-11-6a (West 2016)). We, therefore, reverse the appellate court's judgment reaching the opposite conclusion. We affirm the circuit court's judgment.

¶ 43    Appellate court judgment reversed.

¶ 44    Circuit court judgment affirmed.

¶ 45    JUSTICE THEIS, dissenting:

¶ 46    The 1970 Illinois Constitution fundamentally altered the balance of power between our state and local governments by giving the broadest possible powers to home rule municipalities. *Palm v. Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 30; accord *Mulligan v. Dunne*, 61 Ill. 2d 544, 548 (1975). Article VII, section 6(a), provides that "a home rule unit may exercise any power and perform any function pertaining to its government," including the power to tax. Ill. Const. 1970, art. VII, § 6(a).

- 9 -

¶ 47	Exercise of those powers is the rule; preemption of them is the exception. Section 6(i) provides that a home rule unit "may exercise and perform concurrently with the State any power or function *** to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i). Section 6(g) addresses the power to tax: "The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax ***." Ill. Const. 1970, art. VII, § 6(g). A law denies or limits that power only as far as its language "specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit." 5 ILCS 70/7 (West 2018); see *Palm*, 2013 IL 110505, ¶ 32 (observing that section 7 of the Statute on Statutes has become part of the court's home rule jurisprudence).

¶ 48	The majority states that section 8-11-6a of the Illinois Municipal Code (65 ILCS 5/8-11-6a (West 2016)) "begins and ends with clear legislative intent to limit a home rule unit's authority to impose certain taxes." *Supra* ¶ 24. That is true in a general sense, but the manner and extent of that limitation depend upon the precise language of the statute.

¶ 49	In 1988, section 8-11-6a was enacted. Pub. Act 85-1135, § 1 (eff. Jan. 1, 1990). That statute contained an express limitation of a home rule municipality's authority to impose "a retailers occupation tax, service occupation tax, use tax, sales tax or other tax on the use, sale or purchase of tangible personal property." Ill. Rev. Stat. 1989, ch. 24, ¶ 8-11-6a. Notwithstanding that limitation, the statute listed several taxes that it did not preempt, including "a tax based on the number of units of cigarettes or tobacco products." *Id.*

¶ 50	In 1993, section 8-11-6a was amended. Pub. Act 88-527, § 5 (eff. Dec. 23, 1993). The new statute provided:

> "[T]his Section does not preempt any home rule imposed tax such as the following: *** a tax based on the number of units of cigarettes or tobacco products (provided, however, that a home rule municipality that has not imposed a tax based on the number of units of cigarettes or tobacco products before July 1, 1993, shall not impose such a tax after that date) ***." 65 ILCS 5/8-11-6a (West 2016).

¶ 51	The 1988 statute and the 1993 statute are largely similar. Both specifically state that a home rule tax on cigarettes or tobacco products escapes preemption. The sole difference between the statutes is the parenthetical provision added in 1993. Thus, the sole question before us is the effect of that provision. Did it prevent a home rule municipality, like the City of Chicago, that had placed "a tax based on the number of units of cigarettes or tobacco products" before July 1, 1993, from imposing "such a tax"—that is, "a tax based on the number of units of cigarettes or tobacco products"—after that date? The answer is no.

¶ 52	As the majority recognizes, statutory interpretation has one goal: ascertaining and effectuating the legislature's intent. *Supra* ¶ 19. That intent emanates primarily from the language that the legislature used in drafting the statute. *Lawler v. University of Chicago Medical Center*, 2017 IL 120745, ¶ 12. When the statutory language is clear, our inquiry ends: We must apply it as written. *Id.* ¶ 40. We may not depart from the statutory language by adding exceptions, limitations, or conditions that the legislature did not express. *Id.* ¶ 12. And we may not depart from that language by rendering any part of it superfluous. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 25. Unfortunately, the majority's recitation of those well-established principles is mere lip service.

- 10 -

¶ 53    The majority divides the relevant provision of section 8-11-6a into two parts: the first clause, which "exempts municipal taxes on cigarettes or other tobacco products from the otherwise expansive preemption of such taxes in the remainder of section 8-11-6a," and the second clause, which "sharply limit[s]" municipal taxing authority. *Supra* ¶¶ 32-33. Ascribing an "ordinary meaning" to the language of both clauses, the majority surmises that "the statute allows only those municipal taxes on cigarettes or other tobacco products enacted prior to July 1, 1993," because the legislature stated that a home rule unit shall not impose such a tax after that date. *Supra* ¶ 34.

¶ 54    The majority misrepresents the statutory language. The legislature never stated that a home rule municipality may not impose a cigarette or tobacco products tax after July 1, 1993. Rather, the legislature stated that a home rule municipality may impose a cigarette or tobacco products tax, if the municipality has done so before that date. As the City correctly observes, the subject of the parenthetical provision is "a home rule municipality," and the statute distinguishes between municipalities that imposed such a tax before the cutoff date and those that did not. The 1993 statute did not cap cigarette and tobacco products taxes; it capped the set of municipalities who may have them. Stated differently, the statute is a limitation on who, not what.

¶ 55    The majority's distortion of section 8-11-6a is compounded by its suggestion that the statute contains words that the legislature did not use. The majority insists that the cutoff date represents "a legislative decision to exempt only *existing* taxes on cigarettes or other tobacco products." (Emphasis in original.) *Supra* ¶ 36. The majority continues:

> "[T]he plain language of section 8-11-6a does not support a conclusion that it was intended to allow new municipal taxes on cigarettes or other tobacco products in the future. Rather, the plain statutory language demonstrates legislative intent to prohibit future municipal taxes on cigarettes or other tobacco products unless the tax was enacted before July 1, 1993." *Supra* ¶ 36.

Notably, the majority fails to define what it means by "new" or "future" taxes, but presumably they would include ordinances increasing taxes.

¶ 56    The legislature could have written a statute like the one imagined by the majority. Instead, the legislature wrote this statute. Section 8-11-6a does not contain the term "existing" with respect to municipal taxes that are allowed, and it does not contain the terms "new" or "future" with respect to municipal taxes that are prohibited. Section 8-11-6a does not preempt a tax based on the number of units of cigarettes or tobacco products. It preempts a home rule municipality that has not imposed a tax based on the number of units of cigarettes or tobacco products before July 1, 1993, from doing so thereafter. The City imposed such a tax in 1971, so it was not barred from imposing such a tax in 2016.

¶ 57    The majority dismisses that unavoidable conclusion as an "expansive interpretation" of section 8-11-6a. *Supra* ¶ 37. According to the majority, the City's 2016 ordinance taxing other tobacco products was an impermissible exercise of its home rule authority, due to "the undisputed fact" that such a tax was not on the books before July 1, 1993. *Supra* ¶ 37. The majority rejects the City's contention that "a tax on cigarettes is synonymous with a tax on other tobacco products" because the City offers no support for that proposition. *Supra* ¶ 37.

¶ 58    No support is required because section 8-11-6a does not refer to multiple taxes, but simply "a tax." The tax mentioned in the statute, both before and after the amendment, has always

been singular—one on "the number of units of cigarettes or tobacco products." That is the antecedent to the phrase "such a tax." Under the statute, the limitation on a home rule municipality's power to tax turns on whether the municipality has imposed "such a tax," not on whether it has imposed an individual tax on cigarettes or an individual tax on tobacco products.[2]

¶ 59 The driver behind the majority's holding is its own vague sense of "the overarching legislative purpose" of section 8-11-6a. *Supra* ¶ 38. The majority guesses that the legislature sought to outlaw "unlimited future taxes on all tobacco-based products." *Supra* ¶ 38. That is not what the legislature said. Our focus must remain on the plain language of the statute, which sets forth the manner and extent of the preemption. See 5 ILCS 70/7 (West 2018). Here, that language indicates that the legislature wanted to leave untouched the authority of some home rule municipalities to impose a tax on cigarettes and tobacco products but to limit any expansion of that authority to other municipalities. In my view, the City clearly had authority to impose a tax on the number of units of cigarettes or tobacco products. Its 2016 tax ordinance was a permissible exercise of that authority.

¶ 60 For that reason, I respectfully dissent.

¶ 61 CHIEF JUSTICE BURKE took no part in the consideration or decision of this case.

---

[2]The parties agree that no municipalities taxed tobacco products before 1993. The majority, however, ignores that fact, rendering the legislature's reference to tobacco products superfluous. More importantly, the majority's interpretation of section 8-11-6a is contrary to the plain language of the statute. The majority insists that the City could not tax tobacco products because it had not taxed them before the cutoff date. If the majority is correct, no municipality could ever tax those products because no municipality has ever taxed them. The statute, however, allows a home rule municipality, like the City, who has imposed a "a tax on cigarettes or other tobacco products" before the cutoff date to impose such a tax after that date. The statute clearly contemplates a tax on tobacco products.